Good morning. I represent the appellant Rafael Villalobos. This case is about unlawful age and disability discrimination. Time Warner Cable fired Mr. Villalobos after 24 years of employment because of his age and disability. Now, Time Warner Cable is saying they didn't fire Mr. Villalobos because of his age or disability. Instead, they're saying that they fired Mr. Villalobos because of his absences due to his medical condition, which is his disability. So Time Warner Cable is doing two things here with their defense. One, they've suggested, if not outright admitted, that they fired Mr. Villalobos because of his medical leave. And two, Time Warner Cable is swapping one unlawful termination decision for another. That is, Time Warner Cable didn't fire Mr. Villalobos because of his age. They fired him because of his medical leave disability. Now, the question of whether Time Warner Cable firing Mr. Villalobos was unlawful is a question of reasonableness. That is, given the facts, was Time Warner Cable refusal to give Mr. Villalobos an additional two weeks of medical leave of absence, an additional two weeks of leave after he gave them 24 years, was that a reasonable decision? Let me, if I may, this is a summary judgment case, I believe, right? Yes, Your Honor. And I'm a big fan of letting the jurors decide these types of cases in general. And my orientation is in that direction. But the facts here give me some pause. And let me see whether I have these facts that are not contested and tell me if I'm wrong. Because a lot of times you look at the facts and whether or not the case should go to the jury or not, I have to make those decisions all the time. So I have this here, that on May 1st, 2013, he took his first leave of absence to July 27th, 2013, at which time he had exhausted his FMLA leave. On July 31st, 2013, Time Warner gave the plaintiff a packet to assist him in getting further leave. So they tried to accommodate his need to have an extended period of time when he would not be coming back to work. On August 8th, the plaintiff requested and was granted further leave until September 1st, 2013. So certainly he was accommodated every which way up to that point. Instead of returning to work, he submitted a doctor's note and requested additional leave for another month to October 1, 2013, which was granted. On October 7th, 2013, he did return to work and he worked until November 12th, about a month. Then he requested another leave, which was granted again until January 24th, 2014. So so far his employer was just accommodating him every which way whenever he requested additional leaves. Then what happened on January 24th? He didn't return to work. On February 6th, 2014, requested yet another leave to March 10th, 2014, and then he was terminated on February 21st because of his frequent absences, unpredictable and unreliable expected dates of return. And that's basically the employer said enough is enough. When do you draw a line here? I mean, certainly you would not argue that the employer had the obligation under the law to continue to accommodate him ad infinitum. It seems that the employee did everything here to accommodate him until he didn't show up. And how do you square that with his entitlement to go to the jury to resolve this litigation? Yes, Your Honor. And California Fee Howe Law is extremely liberal and the courts do sometimes conflate the federal standard with the California standard, which is a lot higher. Now, under California law, there's only one standard and it's undue burden. Did Mr. Villalobos' leave of absence cause undue burden for the company? Now, if it's a small mom and mom and pop shop, it's understandable that an employee that is necessary for the business, meaning if he's not there, the business can't operate. Let me ask you this. I'm just concerned about how many leaves was he supposed to be granted? I mean, does it come a time when enough is enough? I mean, what does California law say or the federal law say? Is that what really Time Warner was supposed to do? Whatever they would terminate him, we'd have litigation? They have to show us undue burden, and they haven't done that here. They have failed to show that it would have been an undue burden to accommodate. Your position of the law is that he's entitled to continuous leaves, even if he doesn't show up when he's supposed to show up, even if he has to call in or they have to find out where he is. If it's not an undue burden, this goes on ad infinitum. Is that your understanding of the law? No, Your Honor. But I do disagree with the facts that he didn't show up when he was supposed to show up because he did. And there's a huge credibility issue here because Ms. Froster, the HR representative who is responsible for the interactive process, meaning responsible for corresponding with Mr. Villalobos about are you coming, are you not? There is a credibility gap because she claims that she did, but then evidence has shown that she didn't even tell him that he was terminated. She stated on the record that I sent him a writing, a letter. What did he do? I think under the law, there's a mutual obligation to engage in an interactive process. That's correct, Your Honor. Employee, they sit down, they talk about things, they try to work this out. Yes, Your Honor. Now, I know at time one it did. They continued to grant him leaves, and they gave him a package, and they encouraged him to apply. What did he do? To what extent did he discharge his obligation to engage in an interactive dialogue with the employer other than to not show up? He notified them. Every time he needed an additional leave, he let them know that his doctor was going to put him out for an additional two weeks. They accommodated him. They did, but not at the very end. And the law is just because you accommodated somebody in the past, you can't use that as an excuse to say we can have another dialogue at the end of the line here. He just didn't show up. He did, Your Honor, and that's a factual dispute that's reserved for the trier of fact, I believe. I don't see any factual dispute here. There is, Your Honor, because they're saying he didn't engage in an interactive process, but there's evidence that he did. There's correspondence, there's his testimony saying he called in, and how would they have known to reject his request for leave if he never made one? Their credibility is in question here, and there is a big issue. And also, I do want to point out the two comparator evidence. There were two younger employees. One was on continuous medical leave for a year and a half. A year and a half. And Time Warner Cable, the same manager, testified that he's not in danger of termination, and he's not in danger of being warned at all. Another employee who's ten years younger than Mr. Villalobos. Those people engaged in an interactive process. They continued to submit letters. They showed up on time. This person was AWOL. He was not, Your Honor. I disagree with that fact. He was not AWOL. That's a factual issue that the jury has to decide. What if the jury were to decide that he did not show up, and that he did not really make any effort to try to get an extended leave of absence for the fourth time? Could they find it his favor, nonetheless? Even if Time Warner could have hired other people and there was no problem with them getting employees? To play that out, the jury found out that Mr. Villalobos dropped the ball. He, the employee of a huge corporation like Time Warner, he's the one who dropped the ball. Then they would have to rule that perhaps he didn't engage in an interactive process. But that doesn't automatically mean Time Warner Cable's discriminated animus is gone. It doesn't take... So let me beat this to death, if I may, with my apologies. Show me, tell me specifically, factually, on January 24th, when and how he engaged in his obligation to discharge his responsibility to interactively deal with his employer to engage in an interactive process. Tell me factually how he did it. He submitted his doctor's note to Time Warner Cable, saying he needed an additional two weeks' leave. When was that? I don't think he submitted it on January 24th at all. Because there has to be facts here to give to a jury. So he was... On December 9th... There's a doctor's note that talks about February 10th, I believe. When was that note submitted? On December 19th, 2013, Time Warner Cable asked Mr. Villalobos, notified him about his return to work status by January 25th. And that date fell on a Saturday, so he promptly responded on the next business day, which was January 28th, 2005. Right, so on the 24th, there was nothing. And then a couple of days later, there was some sort of a doctor's note. On January 28th, that following Monday, he submitted a doctor's note, saying he needs to be out until March 10th. And Time Warner Cable got that note, and two weeks later, determined... When was he discharged? February 21st, 2008. The company had the note from the doctor when he was discharged? Yes, Your Honor. Of course he did. But he had communicated with them before they discharged him. And was there any response to his communication to them other than a discharge? That's in dispute, because they claim that, oh yeah, we reached out to him. But then there's evidence that they didn't even notify him about his termination. Because he wanted to know what was going on, so he called Ms. Froster repeatedly. And she testified, well, I sent him a letter in writing saying we're terminated. We asked for that letter, and Time Warner Cable finally came around and said, that letter does not exist. He never returned to work, though. And he never heard anything back, and he never went to work? He just stayed away? Your Honor, so when he was ready to go back, he contacted Time Warner Cable, but they never got back to him. When was he ready to go back? On March 10th, 2014. So he was not working at all from January 24th. He didn't show up, and then he was discharged in February. He wanted to go back to work on March 10th, right? Correct. So he notified Time Warner Cable that he would be coming back to work on January... So he's entitled to do that because a doctor's note was supposedly submitted three days after he was supposed to return to work. That's your case, basically. No, Your Honor. So on December 19th, Time Warner Cable asked Mr. Villalobos to notify them when he's coming back to work. He told them he's coming back to work on January 25th. He didn't do that. He did do that. He notified them on the next business day on that Monday. He never came back to work? No, because he had an additional two weeks' leave of absence. He was relying upon supposedly a doctor's note that was sent three days after he was supposed to come back from work. He never showed up again. Was it sent one working day after he was due to show up? So Time Warner Cable asked Mr. Villalobos, let us know about your status on January 25th. Meaning, can you come back to work or do you need additional time? January 25th fell on a Saturday, so that following Monday, Mr. Villalobos told him, I need an additional two weeks to March 10th, and here's my doctor's note. And that's when they fired him. I guess I just don't understand. He was supposed to come back on January 24th, and nothing happened until two weeks before the March 10th date. May I ask a question? Judge Box says he was due to come back, and you said he was due to notify them. Which was it? He was not due to report back. He was due to notify them about his status on January 25th, correct, Your Honor, about whether he can come back or whether he needs additional time. So what happened on January 24th? The employee wanted to know that he was coming back to work, so what happened? So he notified them on that following... He sent them his medical doctor's note on January 28th. We have that note in the record? Yes, Your Honor. And the note says he should stay out until March 10th? That was the effort that he made to enter into a dialogue with his employer in order to have a continued leave of absence. He relied completely on that note from the doctor that was submitted two or three days after he was supposed to return to work. I just want to get the facts down. Yes, Your Honor. You say it's not after the day on which he was to return to work. It was on the day on which he was to notify them of his status. Correct, Your Honor. Well, there is a difference. There is a difference, because I would think that's the date that he promised to go to work, and he didn't show up. That would be bad. But here, they just asked him, what is your status? We've only got one minute. I do want to address the comparison. Can you just tell me where that doctor's note is in the record? Sure, Your Honor. I believe it's in the testimony of Adriana Froster herself, who was dealing with the interactive process. I didn't see any note. I mean, I may have missed it. I believe she testified about receiving a doctor's note from him. Just give me the best record reference you have, if you have it. You can submit it, I guess, afterwards. Okay. You're going to have rebuttal, so you can look for it then. Cancel? Sure enough. Thank you. Give your opponent a chance. Thank you, Your Honor. May it please the Court, Joseph Osmer for the Defendant Annapolis TWC Administration, LLC. I want to clarify the record on a couple of things to start with. I'd appreciate it if you could straighten out for me, and I admit being confused, what happened on January 24th and thereafter? I will be happy to start there, Your Honor. His requested accommodation, he sent a note in January 24th with a return on January 24th. This is undisputed. Was there a return on the 24th or was there a leave through the 24th? The leave was through the 24th, Your Honor. And if you look at Actually, the 24th is Saturday for DSRs, these direct sales representatives. Saturday is a work day. I want to address his work day argument, because even the numbers don't add up on that. But Saturday is in and of itself a work day. It's one of the probably the most lucrative day for them. They gave him the permission to come back in January 24th. He accommodated that. Then what happened after? He didn't show up, but he submitted a doctor's note? Your Honor, just to allay any suggestion that there's a dispute on this, it is an undisputed fact that the plaintiff submitted to in response to our established that the accommodation requested was an extension of leave until January 24th. And that's in the supplemental excerpts of the record at 00048. Absolutely undisputed fact that the accommodation he requested in December was an extension to January 24th. To answer your question, Judge Block, what happened on January 24th? Saturday, he claims that that was a Saturday, which is a work day for Mr. Villalobos. Again, because that's one of the most lucrative days to knock on doors and sell cable TV because everybody's home or most people are home. What happened is they didn't hear from him at all. Even accepting the plaintiff's argument that he contacted him in the next work day and even accepting, OK, if Saturday is not a work day, that would be Monday, January 26th, not the 28th. The note... We wondered where he was. He didn't show up. No, Your Honor. That's very important. And if we'd wanted to fire him, if they were chomping at the bit to fire him because of a disability, they could have fired him when he didn't return from work and they didn't hear from him when they heard from him was February 6th. The note itself was not even written until January 28th, which is four days after the return date of January 24th. And certainly not a Monday. The note was written on January 28th. Incidentally, what that note says is that his symptoms had become worse and that there was essentially no change since the prior note since the doctor had sent on July 22nd of 2014. Is that a minute ago that that note, that doctor's note, I presume, was written on the 28th? It was written on the 28th, Your Honor. The note says what? The note asks for an extension of... Until March 10th. The note asks for that. The doctor asks for that. Right. And TWC testified that they received the note. The HR person received the note on February 6th. Within a week, TWC got together, discussed whether they could continue to accommodate this. And this is very important. The plaintiff's narrative makes it sound like Time Warner Cable refused to accommodate a two-week request for a leave of absence. That absolutely defies reality. What we have here is a nine-month process. This is a company that did it right. For nine months, they accommodated every single extension request, every single leave request, as you observed, Your Honor, until finally they're getting these, I'm going to come to work on this day. Not once did he come back on the day he said he would. And that's important to them. They're planning for that. The testimony was they're a man short. They're trying to cover their territory for his team. They're a man short, but they're planning for him to come back on these dates he's providing. But they were all unreliable. They did have a doctor's note, albeit three or four days late, that said, please extend him yet an additional leave for March. And they decided not to do that. That's correct, Your Honor. The note was written four days late and Time Warner Cable received it a week to a week and a half late. Does that really make a difference whether it's the 24th or the 27th? No, Your Honor, because even if they'd have received it on the 24th, the law is very clear that they would not be required to continue to accommodate. As a matter of law, that's not a reasonable accommodation. And I'd like to address that issue. Why not? I mean, as counsel pointed out, you had employees who accommodated for further periods of time. Well, I'll address that in a moment, Your Honor. But the reason it's not is because under the FEHA, like the ADA, and I would dispute my colleague's characterization of the law that FEHA differs significantly from the ADA. The California courts have repeatedly said that the two track each other closely in most regards. But under the FEHA, just like the ADA, the threshold requirement to even be protected by the disability provisions of the FEHA is to prove that you are a qualified individual. That burden of proof lies solely with the plaintiff. That's California Supreme Court case law, Green v. State, which is at 40. But the doctor said he could come back on March 10th. I mean, this is just yet another request for an extended leave of absence. Why should it not be for the jury to sort all this out? Because the case law is clear that the definition of a qualified individual, as the court knows, is someone who can do the job with or without a reasonable accommodation. Here, the accommodation he was requesting was not to work. But there are other accommodations. That's not the only one. Your Honor, it's the only one that was on the table here because this wasn't a lifting restriction. It wasn't a standing restriction. It was because his anxiety and depression and insomnia was, as the doctor said, his symptoms were even worsening at this time, he couldn't work at all. It was no work at all. That was what the restriction was. So because of that, in the context of this case... I have to interrupt. I have to read that note. Does the note say he cannot work at all again? Or does it say he can come back on March 10th? It says he can come back on March 10th. But until then, he can't work at all. This was not a case of physical restrictions. Or, again, it's not a case where he could work at home because here attendance is an essential function because you're selling door-to-door. You have to be out in the field selling door-to-door. There are other jobs that are less stressful than going out and trying to sell... What is it you're selling? Cable, Internet services, things like that. That's a fairly stressful job to go door-to-door, deal with people you don't know. There may be other jobs in the company that can be performed with less stress. That would be certainly a way to try to accommodate somebody. The plaintiff never requested an accommodation of that nature? He doesn't know all the jobs you have. He doesn't know what's available. Your Honor, he specifically asked for leave extensions, which is what the company gave him. Yes, relief extension, and then part of the duty of the company. I think the interactive responsibility flows both ways. The employer has that responsibility as well. The employee could say, let's sit down and talk about this. You can't do this door-to-door, but maybe you can do some other work. None of that was engaged in here by either party. The talking about other work was not engaged in because it's the company's understanding from the notes that he could not work at all. He can't sleep. He's having OCD symptoms. But if I may, Your Honor, with the interactive process, the issue here on all of his disability claims, all three or four of his disability theories, the threshold issue that he can't get past is the qualified individual issue. It is California Supreme Court law that he has to prove he's a qualified individual, which means he has to prove that he's a qualified individual. I mean, I'm beginning to get a sense. I understand the dilemma from the employer's point of view, how much is enough is enough. But it seems to me that this is the type of thing that factually has to be sorted out by a jury. No, Your Honor. It's a matter of law, an employee who can't work at all, not just the essential functions, but no functions of the job for nine months and is in a cycle. That's for the jury to decide. They have the doctor's note. They have his testimony, arguably. Why not let the jury make that decision? Your Honor, if that was true, there would never be summary judgment on the qualified individual basis in any of these cases. And we've cited cases in our brief where courts have repeatedly held, repeatedly, that where an employer is here, accommodates an employee with reasonable leaves of absence to allow the employee to get better. But those leaves of absence turn out not to be effective in that regard. They don't make the employee better. The employer, as a matter of law, is not required to extend further leaves. This employee was unable to work all but for a brief five-week period over nine months. There's no case out there, and plaintiff certainly hasn't cited one, that suggests that it can be a reasonable accommodation to require an employer to continue this. That reads the qualified individual requirement right out of the statute, if you accept his argument. Because a qualified individual is one who can do the essential functions of the job. It seems that at a trial the doctor can testify whether he can come back to work, what his disability is. They can talk about whether they engage in the interactive process. There's a whole range of things that can be explored here. And all you have, and I sympathize with that, you say, look, enough is enough. We did it for nine months. We're not going to do it again for another two or three months. We've had it. I get that. But I think that this is something that has to be factually explored. That's my gut feeling. Well, Your Honor, it is factually supported. The own doctor's note said he was out of work. But there is no, at some point, the law has to draw a line, as Your Honor was saying. And if a jury was allowed to find that someone who can't work at all for nine months, and not only nine months, but it's a cycle, he never made any of his return dates. And if you look at the substance of the note, there was no reason for the company to believe that he would return on March 10th, because his symptoms were actually getting worse, not better. There was no reason for the company to believe that this cycle would break. If you're going to say that a company has to go to a trial, if it wants to break a cycle like this, you're reading the qualified individual out of the statute. Can I interrupt this? Yes, Your Honor. I'm sorry. What is the actual evidence offered by the company of the burden that a leave of absences are causing? Thank you, Your Honor. And one thing I would like to clear up, undue burden is not the only standard. The first thing in this California Supreme Court law, he has to prove qualified individual. If he shows a reasonable accommodation, what undue burden means is that even if he's identified a reasonable accommodation, the employer can still estate liability if it can show it's an undue burden. As the district court found as an additional reason for granting summary judgment, the district court did find there was undue burden, even if he could get past the district court's finding that there was no reasonable accommodation failure here, that he's not a qualified individual. The evidence was these unpredictable leaves of absence where he was giving us return dates. They're a man down. They're a man short in covering their territory. And they're not replacing him because they're planning, OK, he's coming back on this date. So the company's planning around him coming back on September 1st. Then they're planning on him coming back around on October 1st. Then he goes out again in November, and they're planning, they don't know when he's coming back, but then they plan for the 24th. And they keep getting their carpet jerked out from under them. They have to cover their territory a man short. That is the undue burden. That was the testimony of the manager who was the decision maker, Mr. Simons. And I would note that in the district court and here, the plaintiff has not really addressed the district court's analysis on that. Instead, what the plaintiff did for the undue burden argument was created a straw man, claimed that the undue burden was that the manager and supervisor wanted to have more sales and make more money for themselves and their bonuses. Neither the manager nor the supervisor testified that way. And of course, we've never articulated that as the undue burden. But what the undue burden was, what I just explained to your honor, the district court agreed with that. Plaintiff has never actually attacked the argument or the analysis of the district court and has arguably waived the issue because of that. But most importantly, I would say, you don't even get to undue burden here because there's the accommodation requested as a matter of law is not reasonable. To force a company to stay in this cycle or to go to a jury trial on it is to write out of the statute the requirement that someone be a qualified individual who can do the essential functions. What this would do is say that you can continue to give notes which not help you do your essential functions, which excuse the essential functions. That's what all of these leaves of absence did. They didn't help him perform the essential functions. They excused them for a nine-month period. Your Honor, that, the language, the plain language of the statute won't bear that construction. It wouldn't bear that result because it says you have to be able to perform the essential functions with or without a reasonable accommodation. When you get to this nine-month cycle, which based on the note and the substance of the note, although he said he would come back on the 10th, it certainly doesn't sound like this is going to be any more reliable than the other ones. They went above and beyond. This company did it right. They didn't have to put up with it for nine months. And they told him when they extended his leave to October 1st, this is also in the undisputed facts, which they've agreed to, they told him that they might not be able to accommodate further extensions, that they would have to evaluate it. They did evaluate it, and they did extend. But they told him in December, when he asked for the January 24th, they told him again, we might not be able to accommodate further extensions. We'll have to evaluate it. When they got his note on the 6th, they evaluated it and said, at that point, as Your Honor says, enough is enough. We can't plan around this anymore, and we need to move forward. And what I would say, gentlemen, is that because of the qualified individual issue, which he cannot establish as a matter of law, he can't establish it, that takes care of all of his disability claims. His age claim is the prima facie element of performing the job satisfactorily at the time of discharge, as the district court found, that's just not there, even if he got beyond that. Although he said he identified evidence of a younger comparator, he didn't. All of those are mischaracterizations of the record. That's very clearly laid out in our response brief. You said that because he's an older person, he's slower and can't be as productive as younger people. But the testimony that I read said that the older people are more productive, because while they can't knock on as many doors, they're more effective because of their age and maturity, and they actually are better salespeople. You never cited that. You just gave a cryptic part of that. Your Honor, that is in a chart in our brief. We never said that he was older and slower and couldn't knock on as many doors. That's one of his allegations. But what the testimony actually says, that's what we pointed out. The testimony doesn't say that. The testimony says exactly what Your Honor said, that the older people are better salespeople. That's what we put in in our defense. Your Honor, so the doctor's note is on number 138. And I want to note that there's no evidence of when this doctor's note was written. Defense counsel comes up here and says this doctor's note was written on January 28. There's no foundation for that. Only the doctor would know when it was written. But what we do know is we have Mr. Villalobos' testimony that he submitted this doctor's note on January 28. And the doctor's note said that he's coming back to work on March 10. Was that note that was referred to by your adversary submitted on the 28th of January? Is it dated? Yes, Your Honor. And it says he's coming back to work on March 10. Now, the law of the qualified individual is that question is, is he qualified on when he's coming back, not when he leaves? The law is when an employee obtains leave of absence as an accommodation for disability and is terminated while on leave, the question of qualification to perform the essential function of the job is evaluated at the time the employee sought to resume the job, not when the earlier personnel decision was made. It would defy logic. How long should he be accommodated? I mean, March and then six months later and then another year? Do you have any sense of how long the employee is supposed to accommodate him? It's a question of reasonableness. Whether Time Warner Cable is firing on Mr. Villalobos based on his disability was justified. It's a question of reasonableness. Was a nine-month leave of absence, given the circumstances of the case, given Mr. Villalobos' 24 years of employment with them, given the size of the company, was that reasonable? And I believe that's something for the community of jurors to decide, for the peers to set the standard of what a company of that size can do and cannot do. So he should be given leave ad infinitum, just forever? No, Your Honor. And I don't think any reasonable juror in our system would rule that way. You think it's for the jury to decide in this case? Absolutely, Your Honor. And I also want to just quickly point out on the age discrimination, I can't underestimate the comparative evidence. There are two younger employees who were on Mr. Villalobos' team. Same job title, same job duties, same supervisors. One who's in his late 20s, early 20s, had a leave of absence for a year and a half. They did not warn him, and they testified on the record that he is not in danger of being terminated. Another one who's 10 years younger than Mr. Villalobos, again, same job duties, same job title, same supervisor. He wasn't fired. He voluntarily quit. They didn't see that coming. Okay, counsel, your time has expired. The case history will be submitted.
judges: Canby, Reinhardt, Block